[No. E006144. Fourth Dist., Div. Two. Apr. 3, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
VLADIMIR MUCKA HELDENBURG, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1] Parts II and III of this opinion are not published; they do not meet the standards for publication contained in rule 976(b), California rules of Court.

COUNSEL

Corrine S. Shulman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Robert M. Foster and Raquel M. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HOLLENHORST, Acting P. J.**—Defendant was charged by information with one count of robbery (Pen. Code, § 211),[2] which information also specially alleged that defendant had personally used a firearm (within the meaning of § 12022.5) in the commission of the robbery. Defendant pleaded not guilty to the charged offense and denied the special allegation. Following a trial by jury, defendant was found guilty of the charged offense and the special allegation was found to be true. Defendant appeals from the judgment entered upon the jury's verdict and finding.

FACTS

The issues raised by defendant on appeal are somewhat limited in nature and do not require a lengthy or seamless rendition of facts.

On the evening of February 12, 1987, an armed man vaulted over the display counter of the fine jewelry department in the Palm Springs Bullocks Wilshire department store. Pointing a firearm at one of the employees, the man demanded that the display counter be opened. The employee complied with the demand, and the armed man thereupon emptied the contents of the display counter into a dark brown bag and ran from the store.

Within a day or two of the robbery, based on a variety of evidence which tended to implicate defendant in the crime, defendant had become a definite suspect as the robber.

On February 18, 1987, defendant obtained a passport on an urgency basis. Two days later, defendant arrived in Amsterdam.

---

[2] Unless otherwise indicated, all statutory section-number citations refer to the Penal Code.

Almost one and one-half years later, in June 1988, defendant was arrested on unspecified charges in Vienna, Austria. The Austrian authorities released defendant into the custody of a Palm Springs police officer. Thereafter, defendant was returned to the United States to stand trial for the Palm Springs jewelry robbery.

Defendant chose to testify in his own defense during the trial. On cross-examination of defendant, the prosecuting attorney asked, "Are you aware of the world market in fine gems in Amsterdam?" Defense counsel immediately objected to the question and a conference was then held out of the presence of the jury to discuss the objection. During the conference, defense counsel moved for a mistrial, assigning prosecutorial misconduct on the ground that the prosecuting attorney's question had improperly and prejudicially assumed a fact not in evidence and touched on a matter on which the trial court had granted a pretrial motion *in limine.* The trial court impliedly denied the motion for a mistrial, but agreed that the jury should be admonished with respect to imputing any evidentiary value to the question. However, upon reconvening the trial proceedings before the jury, the trial court forgot to make such an admonishment.

Shortly thereafter, the evidentiary phase of the trial was concluded and the trial court instructed the jury. One of the jury instructions given by the trial court was CALJIC No. 2.52 (1979 rev.), the "flight instruction:"

"The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine."

As we noted previously, the jury returned a verdict of guilty on the robbery charge and found that the special allegation of firearm use was true. On appeal, defendant raises two distinct contentions: (1) The prosecuting attorney committed prosecutorial misconduct in asking the question about a gem market in Amsterdam; and (2) the trial court erred in giving CALJIC No. 2.52 as an instruction in this case. Finally, assuming arguendo that neither of the above alleged shortcomings rises to a level of reversible error, defendant argues that the cumulative impact of the asserted errors rises to such a level. As we discuss below, none of defendant's contentions requires reversal of the judgment entered in this case.

Further facts will be referred to, as needed, in the discussion which follows.

## DISCUSSION

### I.

### PROSECUTORIAL MISCONDUCT

Clearly, the prosecuting attorney's question concerning defendant's awareness of the existence of a gem market in Amsterdam assumed a fact not in evidence—the existence of such a market—thereby possibly establishing an unwarranted but nevertheless prejudicial nexus in the collective mind of the jury between the jewelry robbery and defendant's hurried trip to Amsterdam. The asking of that question, then, does raise the issue of prosecutorial misconduct. (See, e.g., *People* v. *Blackington* (1985) 167 Cal.App.3d 1216 [213 Cal.Rptr. 800].) ■ Before we can reach the merits of defendant's assertion of prosecutorial misconduct, however, we must assure ourselves that the issue has properly been raised on appeal. ■ Ordinarily, a defendant will not be heard to complain on appeal of prosecutorial misconduct unless a timely objection and request for jury admonition was first made in the trial court.[3] (*People* v. *West, supra,* 215 Cal. 87, 96; *People* v. *Johnson* (1989) 47 Cal.3d 1194, 1236-1237 [255 Cal.Rptr. 569, 767 P.2d 1047].) Thus, ". . . the initial question to be decided in all cases in which a defendant complains of prosecutorial misconduct for the first time on appeal is whether a timely objection and admonition would have cured the harm. If it would, the contention must be rejected [Citation]; . . ." (*People* v. *Green* (1980) 27 Cal.3d 1, 34 [164 Cal.Rptr. 1, 609 P.2d 468], disapproved on other grounds by *People* v. *Hall* (1986) 41 Cal.3d 826, 834, fn. 3 [226 Cal.Rptr. 112, 718 P.2d 99], and criticized on another issue in *People* v. *Morris* (1988) 46 Cal.3d 1, 17-18, fn. 6 [249 Cal.Rptr. 119, 756 P.2d 843].)

■ On the face of it, a preliminary *Green* analysis (see, *ante*) is not applicable to the facts of this case. In this case, a timely objection *was* made to the prosecuting attorney's question and a timely request for a curative admonition to the jury was *also* made. Thus, this case would not appear to represent a situation in which an assertion of prosecutorial misconduct is being made "for the first time" on appeal. Further analysis, however, leads us to conclude to the contrary.

---

[3] We say "ordinarily" because there is a well-recognized exception to this general rule: There is no need for an objection and request for admonition in order to preserve a charge of prosecutorial misconduct for appellate review in those instances where the misconduct is of such an egregious nature that no amount of intervention by the trial court would serve to insulate the jury from the prejudicial impact of the misconduct. (*People* v. *West* (1932) 215 Cal. 87, 96 [8 P.2d 463].) Our review of the record as a whole in this case has convinced us that this exception does not apply here.

The following exchange (edited by us for the sake of brevity and relevance) occurred during and immediately after the conference held by the trial court with respect to the prosecuting attorney's question:

"[DEFENSE COUNSEL]: Objection, Your Honor. May we approach?

"THE COURT: Sure.

[THE FOLLOWING OCCURRED OUTSIDE OF THE JURY'S PRESENCE]

"[DEFENSE COUNSEL]: This was one of the issues I specifically raised the first time before we started even in this case. I moved it in limine. My understanding was the motion is granted. The prosecutor just asked the question. I move for a mistrial.

". . . . . . . . . . . . . . . . . . .

"THE COURT: Well, I remember him agreeing not to do certain things such as this statement, this unsolicited statement.

". . . . . . . . . . . . . . . . . . .

"[DEFENSE COUNSEL]: That is why I moved to exclude it because now there is a fact in the minds of the jury that has not been proven to them.

". . . . . . . . . . . . . . . . . . .

"[PROSECUTING ATTORNEY]: I don't see any reason to admonish them of anything. He has answered the question.

"THE COURT: I think we better though. All right. Let's go.

[THE FOLLOWING OCCURRED IN THE JURY'S PRESENCE]

"[PROSECUTING ATTORNEY]: Your Honor, I just wanted to make sure of one thing that I neglected to ask. Did the court reporter get the answer to the last question?

". . . . . . . . . . . . . . . . . . .

"[PROSECUTING ATTORNEY]: I have no further questions, Your Honor.

". . . . . . . . . . . . . . . . . . .

"[DEFENSE COUNSEL]: I have nothing further, Your Honor.

". . . . . . . . . . . . . . . . . . . . .

"THE COURT: Both sides rest?

". . . . . . . . . . . . . . . . . . . .

"THE COURT: All right. Okay. . . . I will let them go. We will start at 9:00 in the morning. Final arguments starting at nine in the morning and then instructions, . . ."

As the foregoing exchange makes clear, the trial court never *actually* admonished the jury to disallow any evidentiary value to facts that might have been suggested by the prosecuting attorney's question—notwithstanding the trial court's agreement with defense counsel that such an admonition was called for. Made *equally* clear by the foregoing exchange, however, is the fact that defense counsel failed to call the trial court's attention to this omission. This failure of defense counsel operates as a waiver of the issue of prosecutorial misconduct on appeal: " '[W]here the court, through inadvertence or neglect, neither rules nor reserves its ruling . . . the party who objected must make some effort to have the court *actually rule.* If the point is not pressed and is forgotten, he may be deemed to have waived or abandoned it, just as if he had failed to make the objection in the first place.' [Citations.]" (*People* v. *Obie* (1974) 41 Cal.App.3d 744, 750 [116 Cal.Rptr. 283], quoting from Witkin, Cal. Evidence (2d ed. 1966) § 1302, p. 1205, disapproved on other grounds by *People* v. *Rollo* (1977) 20 Cal.3d 109, 120, fn. 4 [141 Cal.Rptr. 177, 569 P.2d 771].)

We are aware, of course, that the situation addressed by *Obie* is factually distinguishable from the within situation in that *Obie* dealt with a failure of a trial court to expressly rule on a section 995 motion to have an indictment set aside rather than with a failure to admonish a jury. Nevertheless, the same rationale as that which underlies the above-quoted portion of *Obie* has been applied in a variety of legal contexts (see, e.g., *People* v. *Hoover* (1986) 187 Cal.App.3d 1074, 1085 [231 Cal.Rptr. 203] (failure to renew motion for a change of venue) and *People* v. *Rhodes* (1989) 212 Cal.App.3d 541, 554 [261 Cal.Rptr. 1] (failure to secure ruling on motion to have transcript of jury voir dire provided)) and we here hold that that rationale applies to the situation at hand. The securing of a ruling by the trial court is meaningless if that ruling is not implemented on the record. Counsel has an obligation not only to secure a ruling on any matter addressed to the trial court for resolution, but also to affirmatively seek the full implementation of that ruling once it is rendered.

In this case, defense counsel obtained the trial court's agreement that an admonition to the jury was called for, but then sat quietly by as the trial court omitted to give the admonition. By failing to press the trial court for an admonition to the jury, defense counsel waived the issue of prosecutorial misconduct as effectively as though the issue had never been raised. In short, we view defendant's claim of prosecutorial misconduct, for all practical purposes, as having been raised for the first time on appeal. Consequently, under the guiding authority of *Green* (*supra*, 27 Cal.3d 1), we decline to reach the merits of defendant's claim of prosecutorial misconduct.[4]

## II., III.*

· · · · · · · · · · · · · · · · · · · · · ·

## DISPOSITION

The judgment is affirmed.

McDaniel, J., and Dabney, J., concurred.

A petition for a rehearing was denied April 26, 1990, and appellant's petition for review by the Supreme Court was denied July 11, 1990.

---

[4] Having in any event reviewed the record as a whole in this case, we feel constrained to make the following observation: We seriously question whether the prosecutorial conduct complained of, even if it could be characterized as misconduct, led to a reversible miscarriage of justice. (See *People* v. *Strickland* (1974) 11 Cal.3d 946, 955 [114 Cal.Rptr. 632, 523 P.2d 672].)

* See footnote, *ante,* page 468.